[Civ. No. 6331. Fourth Dist. Dec. 19, 1960.]

RIVERSIDE WATER COMPANY (a Corporation), Appellant, v. JURUPA DITCH COMPANY (a Corporation), Respondent.

Best, Best & Krieger, James H. Krieger and Arthur L. Littleworth for Appellant.

Ernest W. Pitney and Paul Barksdale d'Orr for Respondent.

McMURRAY, J. pro tem.*—This is an appeal from a judgment and decree rendered in an action for declaratory relief which plaintiff contends was erroneous.

This judgment provides that defendant shall receive and be furnished by plaintiff 300 inches of water under a 4-inch pressure at all times at the head of its ditch on the Santa Ana River, less any quantity of surface flow of said river which shall flow to the head of defendant's ditch, so long as the flow of surface or subsurface water in the channel of said river would be sufficient in quantity, if uninterrupted, to pass the canal of plaintiff and flow down-channel to the location of said ditch in the amount of 300 inches measured under a 4-inch pressure. This judgment was based upon a decree made and entered by the Superior Court of San Bernardino County on October 11, 1886, in an action between the predecessors in

*Assigned by Chairman of Judicial Council.

interest of the parties herein dealing with their rights to water in the Santa Ana River, which decree was reaffirmed and modified by contract between the parties dated April 19, 1904.

This contract, incorporating as it does the 1886 decree, was the basis for plaintiff's request for declaratory relief. In its here pertinent parts this contract provides as follows:

After identifying the parties it recites the rendition of the 1886 decree and sets that decree forth in full, including its provisions ordering and decreeing:

". . . that the said plaintiffs (respondent's predecessors in interest and hereinafter designated "Jurupa") are at all times entitled to have, and do have, three hundred (300) inches of water, measured under a four inch pressure, flow down said Santa Ana River into the mouth of their ditch, for the purpose of irrigation and domestic use; that the defendants and each of them (plaintiff's predecessors in interest and hereinafter designated "Riverside") shall, at all times suffer and be required to let sufficient water, at all times, pass their canal or canals, in said river, to equal together with the eighty inches rising below their said canal the full amount of three hundred inches of water, measured under a four inch pressure, at and in the mouth of (Jurupa's) ditch; that (Riverside) be restrained and perpetually enjoined from diverting the water of said Santa Ana River in excess of so much as will, as aforesaid, constitute and make a continuous flow of water into (Jurupa's) ditch of three hundred inches of water, measured under a four inch pressure, . . . ."

The contract then recites that the parties are the successors in interest to the parties in the 1886 action and are bound by the decree "in so far as said decree requires . . . (Riverside) to furnish to (Jurupa) the amount of water referred to in said decree, and in the manner therein referred to," and further recites that the parties ". . . are willing to change the manner of delivery of water under said decree . . ."

And provides: "That the party of the first part (Riverside) hereto shall hereafter be permitted to supply or furnish to the said Jurupa Ditch the three hundred (300) inches of water, measured under a four inch pressure, referred to in said decree, at the head of said ditch, as provided in said decree, but said water, or any part thereof, notwithstanding the terms and conditions of said decree, may be furnished by the party of the first part by pumping such water from wells or furnishing the same through canals, or in any other practicable way,

so that the said Jurupa Ditch shall receive the full three hundred (300) inches of water measured under a four inch pressure, to which the said ditch is by said decree entitled, it being understood and agreed that the amount of water so furnished shall be at all times sufficient, when taken together with that flowing in the Santa Ana river at the head of said Jurupa Ditch, to give and supply to the said Jurupa Ditch the full amount of three hundred (300) inches of water, measured under a four inch pressure; the object and purpose of this agreement being to enable the party of the first part hereto, the Riverside Water Company, to at all times supply the said Jurupa Ditch with the full amount of water to which it is entitled, to wit, three hundred (300) inches of water measured under a four inch pressure, by other means than receiving the same from the flow of the Santa Ana river, that the said Jurupa Ditch Company need not rely solely upon water flowing down the Santa Ana river to supply the said Jurupa Ditch Company with the amount of water awarded to it by said decree.''

The last pertinent provision of this contract provides:

''It Is Further Expressly Understood and Agreed, that this contract shall in no manner prejudice the rights of the said Jurupa Ditch Company, of the parties plaintiff to the decree hereinbefore set forth, or their successors in interest, as to any rights given or conferred upon the plaintiffs in said decree by said decree, and shall in no manner effect the rights of the said Jurupa Ditch Company, or the owners of said ditch, as given and conferred upon the plaintiffs by the said decree hereinbefore set forth.''

The testimony at the trial showed that to support a surface flow of 300 inches under a 4-inch pressure at Jurupa's Ditch head would require perhaps 600 inches of underlying flow below Riverside's canal.

As time passed the surface flow of the Santa Ana River diminished and finally ceased. Riverside has supplied the reserved amount of water to Jurupa throughout the years, having generally done so since the early 1930's by pumping the water into Jurupa's ditch with the possible exception of a few periods of time when surface flow was available to the ditch.

In 1957 Riverside ceased to take water from the Santa Ana River or its tributaries and notified Jurupa that it no longer felt bound to deliver water under the terms of the 1886 decree.

The evidence reveals that there is in the river channel at the Jurupa Ditch a subsurface flow in excess of 500 inches. It is apparent that the 1886 decree was essentially a prohibitory one and it is also apparent that the parties by their contract in 1904 modified said decree and placed a construction thereon which recognized that there was a duty upon Riverside to deliver water to Jurupa. Each party urges diverse interpretations of the decree and the contract here, and each reinforces these arguments by supplying italics or other typographical emphasis to those words or phrases most favorable to its urged interpretation. Such devices, while helping to clarify argument, cannot justify a court in seizing upon one word or phrase to arrive at a fair construction of a document.

Reading the contract of 1904 fairly and fully and regarding the decree set forth therein as part of said contract as specifically set forth, the conclusion of the trial judge seems proper and correct. Both decree and contract were properly considered by the court and viewed together to arrive at the true agreement between the parties. (*Cadigan* v. *American Trust Co.*, 131 Cal.App.2d 780, 787 [281 P.2d 332].)

Appellant contends that the result reached by the court is inconsistent and unrealistic when it is considered that it requires the furnishing of free water to respondent's ditch so long as there are 300 inches of water in the flow, surface or subsurface of the Santa Ana River. The fault, however, lies not with the court for this apparent inconsistency or unreality, but rather with the contract drawn by the parties which, if it means anything, means that appellant, in return for the right to furnish respondent water from any source instead of solely from the river, obtained the right to divert or use all of the water in the river without regard to the downstream rights of respondent in the river. To urge, now that the flow of the river has greatly diminished, that respondent gave up nothing of value or that appellant received nothing of value is to attempt to establish some sort of evaporative theory of consideration.

"If there be a consideration . . . the fact that it subsequently diminishes in value or becomes of no value cannot relieve a promisor from liability on his promise." (*Coulter* v. *Sausalito Bay Water Co.*, 122 Cal.App. 480, 491 [10 P.2d 780].)

For many years appellant was free to make such use of the flow of the river as it deemed wise, free from threat

of action by respondent which would otherwise have existed, and was further free to enlarge and develop its facilities without regard to respondent's right so long as a readily ascertainable, easily controlled quantity of water was delivered to respondent. To now contend that these actions were without consideration is fruitless.

Had appellant continued under the decree without the ensuing contract it may well be that they would not now be required to furnish water to respondent; but appellant did not continue under the decree and did enter into and perform under a contract. Under such circumstances, the finding of the court that the parties to said contract, by a long and unbroken course of action, including the period since the appellant stopped diverting surface water into its canal, have interpreted said contract to be one obligating appellant to furnish respondent with the described amount of water is merely a reinforcement of the proper interpretation of the actual intent of the contract, albeit an important one.

 " '[A] construction given the contract by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight and will, when reasonable, be adopted and enforced by the court.' " (*Huntoon* v. *Hurley*, 137 Cal.App.2d 33, 38 [290 P.2d 14].)

The delivery of water to respondent for 54 years would seem extremely persuasive of the correctness of the trial court's judgment here.

The contentions that certain findings are not supported by the evidence and that the findings do not support the judgment are based upon ingenious argument but are not well taken.

The judgment appealed from is affirmed.

Griffin, P. J., and Coughlin, J., concurred.